UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GERALD SMITH,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | ) | 1:10-cv-1615-JMS-DKL |
| | ) | |
| ELI LILLY & COMPANY,<br>    *Defendant.* | )<br>)<br>) | |

## ORDER

Presently pending before the Court is Defendant Eli Lilly & Company's ("Lilly") Motion for Summary Judgment. [Dkt. 57.] Plaintiff Gerald Smith abandoned various claims during the briefing on Lilly's motion;[1] therefore, his only remaining claim is for disparate pay stemming from Lilly's failure to give him a merit pay increase in 2005. For the following reasons, the Court denies Lilly's motion.

## I.
### BACKGROUND

The Court will only address the facts related to Mr. Smith's remaining cause of action that Lilly unlawfully denied him a merit pay increase for 2005 based on his race. The following facts are not in dispute.

Mr. Smith,[2] who is African American, began working for Lilly in January 1978. [Dkts. 57-1 at 6; 60-1 at 13.] He held a variety of positions at Lilly before becoming an information technology client computing technician in the Client Automated Management Services ("CAMS") department in 2002. [Dkts. 57-1 at 12-13; 57-3 at 3.] In that position, Mr. Smith ran

---

[1] During briefing, Mr. Smith abandoned his failure-to-promote claim, hostile-work-environment claim, his claim regarding the timing of his retirement, and his disparate pay claim regarding 2004. [Dkt. 60 at 5, 9, 10.]

[2] Mr. Smith is also referred to as "Peppy" in the designated materials. [Dkt. 57-1 at 3.]

- 1 -

software on Lilly's standard computers, making sure that programs installed on those computers functioned properly. [Dkt. 57-1 at 13.]

During the relevant time period, Lilly based pay increases "on, among other things, performance relative to group and individual objectives, performance behaviors and position in salary range." [Dkt. 57-3 at 3.] Position in salary range refers to where the employee fell within the salary range established by his pay group level. [*Id.*] The higher an employee was in the salary range, the harder it was to obtain a merit increase, and merit increases were phased out entirely when an employee reached 75% of the range. [*Id.*] Several individuals were involved in determining whether a CAMS department employee received a merit increase, including the employee's supervisor and other supervisors "up through the IT management chain." [Dkt. 60-2 at 39.]

Mr. Smith began report to David Burton in January 2004 when Mr. Burton became the supervisor of the CAMS department. [Dkt. 57-2 at 6.] Gilbert Ellis, who is not African American, joined the CAMS department in June 2005 and also reported to Mr. Burton. [*Id.*; dkt. 60-1 at 13.] Mr. Smith and Mr. Ellis were both level zero and level three testers. [Dkt. 57-2 at 5, 6.]

In 2005, Mr. Smith was given a "stretch goal" to "show that he was doing more than just the bare minimum of operational duties . . . which was something that all employees were encouraged to do." [Dkt. 60-2 at 30-31.] Specifically, Mr. Smith was given the choice of either increasing his workload percentage of operational testing from 33% to 45% or performing additional project work. [Dkt. 60-2 at 28-29.] Mr. Smith chose to increase his operational testing to 45%. [*Id.* at 29.] Mr. Burton followed up with Mr. Smith later in 2005, indicating to Mr. Smith that it "certainly appears that you are keeping your commitment to your statistics." [Dkt. 60-2 at 31-32.]

Mr. Ellis volunteered for an additional duty during 2005 and helped write reports that the CAMS department used to remotely control other machines and keep inventory. [Dkt. 60-2 at 33, 34.] Mr. Burton could not say whether Mr. Smith or Mr. Ellis had more work during 2005 because Mr. Smith's increased testing load and Mr. Ellis' additional responsibilities were "two different types of work. It's difficult to measure." [Dkt. 60-2 at 34.]

Mr. Burton completed performance evaluations for both Mr. Smith and Mr. Ellis during 2005. [Dkt. 60-2 at 36-37, 49.] Out of seven categories, Mr. Smith and Mr. Ellis each received five "successful" ratings and two "needs improvement" ratings. [Dkt. 60-2 at 63, 70.] Both men received "needs improvement" ratings in the same categories—"Create External Focus" and "Anticipate Changes and Prepare for the Future." [*Id.*] Mr. Smith's position in the salary range was 61%, [dkt. 57-3 at 13], and Mr. Ellis' was 56%, [dkt. 57-3 at 26].[3] Mr. Burton recommended that both men receive merit increases for 2005. [Dkt. 60-2 at 39, 42.]

Ultimately, Mr. Ellis received a merit increase for 2005 and Mr. Smith did not. [Dkt. 60-2 at 39, 42.] Mr. Smith left his employment with Lilly on December 10, 2007, after his position was eliminated due to reorganization. [Dkt. 57-1 at 6, 26.]

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a

---

[3] Although Mr. Ellis began 2005 at 44% of the salary range, he transferred to the same position as Mr. Smith in June 2005 and received an increase to 56% of the range. While Lilly initially represented that Mr. Smith was at 63% of the salary range, [dkt. 58 at 3], it acknowledges in reply that, as Mr. Smith pointed out in his response, he was actually at 61% of the salary range in 2005, [dkt. 62 at 8].

material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and re-

solve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## III.
### DISCUSSION

Lilly presents two overarching arguments. First, Lilly argues that Mr. Smith did not adequately plead a claim for discrimination based on Lilly's failure to give him a merit pay increase for 2005. Second, Lilly argues that even if Mr. Smith did adequately plead his claim, he has not made a prima facie case of discrimination or shown that Lilly's proffered reason is pretext.

### A. Failure to Sufficiently Plead Claim

Lilly contends that Mr. Smith's Complaint focuses on the 2007 reorganization that led to Mr. Smith leaving the company five days before his retirement eligibility. Lilly points out that although Mr. Smith initially asserted that Lilly discriminated against him by not giving him a temporary assignment for five days to "bridge" his retirement, Mr. Smith has abandoned that claim during briefing. [Dkt. 60 at 9 n.3.] Consequently, Lilly contends that the only claims remaining in Mr. Smith's Complaint are legal conclusions that are insufficient to support his disparate pay claim.

In response, Mr. Smith argues that his disparate pay claim is adequately pled. Mr. Smith points out that he cited 42 U.S.C. § 1981 and specifically alleged that he was "adversely impacted by Lilly's Performance Management process," "was paid less and received less merit than those who did comparable work," and was "intentionally discriminated against . . . because of his race." [Dkt. 60 at 7 (quoting dkt. 1 at 2).] Additionally, Mr. Smith points out that Lilly anticipated his disparate pay claim in its opening brief; therefore, it was on notice of that claim.

To state a claim for relief, Mr. Smith's Complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 2011 WL 4975644 at *4 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951) (2009)). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Additionally, the height of the pleading requirement is relative to the circumstance. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

The Court agrees with Mr. Smith that his Complaint sufficiently pleads a discrimination claim for disparate pay during his tenure at Lilly. Again, Mr. Smith's Complaint alleges that he was "adversely impacted by Lilly's Performance Management process," "was paid less and received less merit than those who did comparable work," and was "intentionally discriminated against . . . because of his race." [Dkt. 60 at 7 (quoting dkt. 1 at 2).] These are not boilerplate legal conclusions, and they sufficiently plead a claim for disparate pay. Additionally, the Court observes that Mr. Smith's case was severed from the putative class action in *Welch v. Eli Lilly & Company* and that court ordered that the plaintiffs could use the operative complaint from that case as a model for filing an individual complaint. [*See Welch* (1:06-cv-641-RLY-DML) dkt. 541 at 2-3.] Because determining the sufficiency of allegations is a context-specific task, it is relevant that Mr. Smith's action stems from a putative class action that relied, in part, on Lilly's merit pay system to allege that Lilly engaged in discriminatory practices involving employee pay.

For these reasons, the Court concludes that Mr. Smith's Complaint sufficiently states a disparate pay claim.

**B. Analyzing Disparate Pay Claim**

Lilly argues that even if Mr. Smith has adequately pled a disparate pay claim, he has not established a prima facie case of discrimination because he has not identified a sufficiently similar comparator to show that Lilly's failure to give him a merit pay increase in 2005 was discriminatory. Additionally, Lilly argues that even if Mr. Smith establishes a prima facie case, he cannot show that Lilly's proffered non-discriminatory reason is pretext.

Mr. Smith contends that he has established a prima facie case by proffering Mr. Ellis as a similarly situated comparator. Additionally, Mr. Smith challenges the sufficiency of the affidavit that Lilly submits to support its alleged non-discriminatory reason.

*1. Analyzing § 1981 Claim on Summary Judgment*

Mr. Smith asserts a disparate pay claim pursuant to 42 U.S.C. § 1981. [Dkt. 60 at 7 ("Plaintiff's Complaint alleges discrimination solely under § 1981.").] To overcome a § 1981 claim on summary judgment, Mr. Smith may proceed by either providing direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or by showing indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (holding that to analyze a § 1981 claim on summary judgment, "we employ the same framework that we use with respect to Title VII claims"). Mr. Smith relies on the indirect method.

To survive summary judgment, Mr. Smith must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Specifically, he must show that (1) he was

a member of a protected class, (2) that he adequately performed his employment responsibilities, (3) that despite adequate performance, he suffered an adverse employment action, and (4) that he received different treatment than similarly situated persons who were not members of the same protected class. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted). If Mr. Smith can make that showing, the burden shifts to Lilly to come forth with a "legitimate, non-discriminatory reason" for its actions. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted). If Lilly can do so, it will prevail unless Mr. Smith can come forward with evidence that the proffered non-discriminatory reason is "a pretext for intentional discrimination." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011) (citation omitted).

### 2. *Similarly Situated Comparator*

The parties do not dispute that Mr. Smith is a member of a protected class, that he adequately performed his employment responsibilities in 2005, or that his failure to receive a merit pay increase for 2005 is an adverse employment action. Instead, the parties dispute whether Mr. Smith has proffered a similarly situated comparator to establish a prima facie case of discrimination.

The Seventh Circuit Court of Appeals recently emphasized that "the similarly-situated inquiry is flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). Although similarly situated employees must be "directly comparable to the plaintiff in all material respects," they "need not be identical in every conceivable way[,]" and the Court is "looking for comparators, not clones." *Id.* at 846 (citations omitted). As long as distinctions between the plaintiff and the proposed comparator are not "so

significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Id.* Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiff[ has met his] burden on the issue." *Id.* at 847.

Typically, a plaintiff must at least show that a comparator (1) had the same supervisor; (2) was subject to the same standards; and (3) engaged in "similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation omitted). The Seventh Circuit cautioned, however, that these factors are "not a 'magic formula'" and that the "similarly-situated inquiry should not devolve into a mechanical, one-to-one mapping between employees." *Id.* (citation omitted).

With this legal standard in mind, the Court turns to Mr. Smith's proffered comparator—Mr. Ellis. Lilly does not dispute that Mr. Smith is a member of a protected class and that Mr. Ellis is not. As detailed in the background, in 2005, Mr. Smith and Mr. Ellis both had the same job as level zero and level three testers in the CAMS department, [dkt. 57-2 at 5, 6], both reported to Mr. Burton, [dkts. 57-2 at 6; 60-1 at 13], and both received the same performance reviews, [dkt. 60-2 at 63, 70]. In fact, not only did Mr. Smith and Mr. Ellis both receive five "successful" ratings and two "needs improvement" ratings in their evaluations, [dkt. 60-2 at 63, 70], they even received those ratings in the same categories. [*See* dkt. 60-2 at 63, 70.] Although Mr. Burton recommended that both men receive merit increases for 2005, [dkt. 60-2 at 39, 42], Mr. Ellis received one and Mr. Smith did not.

Lilly downplays the extraordinary similarities between Mr. Smith and Mr. Ellis. Instead, Lilly focuses on slight differences between the employees, including that Mr. Ellis had previous supervisory experience, volunteered for a special project, and had a 5% lower position

in the salary range. [Dkt. 62 at 5-6.] But Lilly ignores that although Mr. Ellis may have volunteered for a special project, Mr. Smith significantly increased his workload percentage, [dkt. 60-2 at 28-29], and Mr. Burton could not measure the difference between the workloads of Mr. Smith and Mr. Ellis, [dkt. 60-2 at 34]. Lilly's attempt to materially distinguish Mr. Smith and Mr. Ellis based on Mr. Ellis' previous supervisory experience or the 5% difference in their salary ranges ignores the teachings of *Coleman* and seeks a one-to-one mapping that the Seventh Circuit has rejected.

This case is not a close call on this point. In 2005, both Mr. Smith and Mr. Ellis had the same job, the same boss, received the same evaluations, and were recommended for merit increases. Mr. Ellis received one, however, and Mr. Smith did not. Given the extraordinary similarities between Mr. Smith and Mr. Ellis, the Court concludes that they are similarly situated and that Mr. Smith has established a prima facie case of discrimination.

### 3. Evidence Supporting Legitimate, Non-Discriminatory Reason

Because Mr. Smith has established a prima facie case of discrimination, the burden shifts to Lilly to come forth with a legitimate, non-discriminatory reason for its actions. Lilly has designated an affidavit from Denola Burton, a Lilly human resources representative, to support its assertion that Mr. Smith was not given a merit pay increase for 2005 because of his high position in the salary range.[4] [Dkt. 57-3.]

Mr. Smith challenges the sufficiency of Ms. Burton's affidavit to support Lilly's proffered non-discriminatory reason, arguing that there is no evidence that Ms. Burton was involved in deciding whether or not Mr. Smith received a merit increase for 2005. [Dkt. 60 at 16.]

---

[4] It is unclear whether Ms. Burton is related to Mr. Smith's supervisor, Mr. Burton.

At this stage, the employer must "clearly expound a legitimate, non-discriminatory reason for its choice." *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006). It must "use admissible evidence to raise a genuine issue of fact." *Id.* The employer must explain its claimed reason "clearly enough to allow the court to focus its inquiry on whether the employer honestly believed that reason." *Id.* If it does so, the burden shifts back to the employee to show that the proffered non-discriminatory reason is pretext. *Serednyj*, 656 F.3d at 540.

As an initial matter, the Court notes that although Lilly relies on Ms. Burton's affidavit to support its argument that Mr. Smith was denied a merit pay increase because of his position in the salary range, Ms. Burton's affidavit actually misstates Mr. Smith's 2005 salary range. [*Cf.* dkt. 57-3 at 3 (Ms. Burton's attestation that Mr. Smith was denied a merit pay increase in 2005 because he was at <u>63%</u> of the salary range) *with* dkt. 57-3 at 13 (evidence showing that Mr. Smith was at <u>61%</u> of the salary range).][5] Although this may be a scrivener's error, the Court cannot excuse it when it is the sole evidence supporting Lilly's proffered non-discriminatory reason regarding Mr. Smith's salary range.

Moreover, as Mr. Smith points out, Ms. Burton does not attest that she was involved in the decision to deny Mr. Smith a merit pay increase, and Mr. Smith's supervisor testified that supervisors "up through the IT management chain" made the decision. [Dkt. 60-2 at 39.] While there were likely other individuals involved, [dkt. 60-2 at 39], there is no evidence that Ms. Burton was one of those individuals.

Given that Lilly has not established that Ms. Burton was a decision-maker with respect to the decision to deny Mr. Smith a merit increase, it has failed to show that the proffered non-discriminatory reason – application of the position in range factor – was actually the basis for

---

[5] Again, on reply, Lilly does not dispute Mr. Smith's assertion, supported by evidence, that his salary range for 2005 was actually 61%.

Mr. Smith's merit pay denial. Finally, even if the Court were to consider the application of the position in range factor to Mr. Smith, the evidence does not establish, as a matter of law, that Mr. Smith would be totally disqualified from a merit pay increase.

For these reasons, the Court concludes that Lilly has not come forth with sufficient evidence supporting a legitimate, non-discriminatory reason for its actions. Therefore, the burden-shifting analysis stops here and the Court need not reach the pretext analysis.[6] Accordingly, Lilly's motion for summary judgment is denied.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **DENIES** Lilly's Motion for Summary Judgment on Mr. Smith's claim for disparate pay based on his 2005 performance. [Dkt. 57.]

06/05/2012

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Ellen E. Boshkoff

---

[6] Even if the Court were to reach the pretext stage of the burden-shifting analysis, the extraordinary similarity between Mr. Smith and his comparator, Mr. Ellis, is sufficient to create a genuine issue of material fact as to whether Lilly's reason for denying Mr. Smith a merit pay increase in 2005 was pretextual. *See Coleman*, 667 F.3d at 858-59 (holding that evidence of a similarly situated comparator is relevant to both the prima facie and pretext phases and may create a genuine issue of material fact as to whether the employer's proffered reason for its action was pretextual).

FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Johane J. Domersant
BAKER & DANIELS, LLP
johane.domersant@bakerd.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Sharon Yvette Eubanks
SANFORD WITTELS & HEISLER LLP
seubanks@swhlegal.com

Brandon Jamison
SANFORD WITTELS & HEISLER, LLP
bjamison@swhlegal.com

Jamenda A. McCoy
FAEGRE BAKER DANIELS LLP - Chicago
jamenda.mccoy@faegrebd.com

Matthew Louis Schmid
SANFORD WITTELS & HEISLER, LLP
mschmid@swhlegal.com